Next case is United States v. Plany and United States v. Anderson. Have you decided how you're splitting your time? Yes, your honor. What's the plan? I am the counsel for Mr. Anderson and I will be taking 10 minutes, co-counsel will be taking 10 minutes. I will only be discussing two issues and he will be discussing the remainder of the issues. All right, are you saving time for rebuttal? All right, so let's figure it's going to be four minutes for rebuttal. We'll see how it works, but I don't think we'll be able to expand the time on this case. Okay. All right. May it please the court. Good morning, your honors. My name is Tara Hovland. I represent Paxton Anderson. I will be discussing two issues this morning. The insufficiency of the evidence regarding the FDIC element of the M&I bank fraud counts, the insufficiency of the evidence of the Tier 1 loan application count, and the prosecutorial misconduct issue, which we believe needs to be remanded to the district court for reconsideration. In regard to the FDIC elements, this is a case that falls squarely under Bennett and Davis and Bouchard and Dennis, which all say that when there is evidence presented of multiple entities in a bank fraud case, the government has the burden to prove that the entity to which it's saying was defrauded is FDIC insured, and it must prove the interrelations between the entities that are in the evidence. And in this case, there were multiple entities in the evidence. There was M&I Bank, M&I Marshall and Isley Bank, M&I Mortgage Company, also known as MIMC, and M&I Corp. There were several documents entered into evidence that used those terms, but the jury, it was never explained to the jury how these entities were interrelated. The loans were from the bank, right? That's a good question. We don't know where the loans are from. The government is asserting that they're from M&I Bank, which isn't exactly an entity. It's technically M&I Marshall and Isley Bank, and we are asserting that the loans were from MIMC or M&I Corp. But there was evidence supporting the government's theory that they came from M&I Bank, right? Yes, and there was also evidence supporting our theory, and it was never explained. That's why we have two juries. It was out of the sphere of evidence. It was never explained to the jury that MIMC, M&I Mortgage Company, is a mortgage lending institution, and it was never explained to the jury that M&I Corp. is the parent company for M&I Bank, which is a subsidiary, or that MIMC was a non-bank subsidiary. Why did they have to have all that explained to them? Because if it turns out... Or any of it. Because the cases say that they need to have it explained to them, basically. Bennett and Bouchard and Dennis all say that when there are evidence of several entities, the prosecution must present evidence of how those entities are interrelated so that they can meet their burden of proof to prove that the actual defrauded entity is FDIC-insured. In this case, it's unclear which of those four entities was defrauded, and that's why the case needs to be reversed under these cases. It's a jurisdictional requirement. The case law is clear that the government can't play fast and loose with this element, and in this case they clearly did. They were trying to fit a square peg into a round hole. They threw everything at the wall to see what would stick. And when... A lot of cliches in one sentence. I'm sorry. Sorry, Your Honor. I apologize. But moving on to the prosecutorial misconduct remand. Hold on. On the first one. Yes. Your argument goes to every count of the indictment? Pardon? Your argument goes to every count on which there was a conviction? On the first FDIC element, my argument goes to all the M&I bank counts, which are both loan counts and draw requests. And I can tell you exactly which counts those are. It goes to counts 1, 4 through 5, 8 through 10, 13, 24, 26 through 27, and 30 through 31. And in regard to tier 1, that just goes to count 2. That was another case in which there was insufficient evidence because the only documents put into evidence by the government on tier 1 didn't even say tier 1 bank. They said Axis Mortgage and Bank of America. And that was never explained how they were related. And Mr. Bleemaster's testimony was completely vague and equivocal as to whether he even handled the loan in question. And I feel like that subject is fully briefed, actually. So the only counts that don't go to this argument are the tier 1 draw request counts. And I can give you those numbers if you'd like them. Otherwise, I would like to just touch on the prosecutorial misconduct issue. The district court didn't cite the right standard for a motion for new trial on prosecutorial misconduct. It doesn't even seem as if the district court was aware of the standard. Instead, the district court reviewed the motion for new trial only under the Jackson and Neville standard, which is the Rule 29 judgment for acquittal standard. If you're right, the district court applied the right wrong standard to the motion for a new trial. Would the remedy be for us to remand to the district court and ask him if he applied the right standard, what result he would reach? Yes, the district court would have to apply the right standard and make factual findings and probably have a hearing. Because the district court has a duty under that standard to resolve any factual disputes, to make an evidentiary record, and to make meaningful findings of fact in regard to the question at issue, which is whether it's more probable than not that the misconduct affected the verdict. But what if she found no evidence of misconduct? What is there for her to weigh? What is there for her to do? Well, the evidence that was presented to her in the motion for new trial and the reply of the motion for new trial and in the restitution proceedings is replete with evidence of prosecutorial misconduct. What if I disagree with you about that? Okay. I still believe that under Hinkson, it says if the court does not identify the correct legal standard, the case must be reversed. You don't even go to step two. And that's exactly what happened in this case. Judge Kristol's question is, if the district court looks at the allegation of misconduct and finds there's no misconduct, what relevance does the standard have? I mean, there's a weighing, a balancing, but if the district court finds no misconduct, does it matter what the standard is? Yeah. Yes, it does. Because in this case, the district court specifically only cited the Neville's and Jackson standard that has to do with sufficiency of the evidence. It didn't cite any standard regarding a motion for new trial on the prosecutorial misconduct or the insufficiency evidence. So counsel, we're giving you that in this hypothetical? That this statute, forgive me, this standard was misstated. If the correct standard had been stated, how would it have been applied? What would the judge have done? The judge would have had to have a hearing to look at all the evidence that had been presented in the motion for new trial. And weigh it, right? Yes. And if she finds no indication of prosecutorial misconduct, where's the foul on the play? Where's the harm? I mean, we don't typically, I'm never a fan, anyway, as a former trial court judge. I'm not a big fan of with this idea that the court can just find no misconduct without explaining it at all. Okay. Without addressing any of the evidence. So your response is you think as an appellate court we can't make that finding? That's your response? That's correct. On the prosecutorial misconduct. Why not? If we look at the motion, no misconduct, what's the point? What's the point of reamending? This case is so complex and has over 10,000 documents and everything ties to something else. It seems... What's the misconduct? The misconduct here is that the prosecution basically was charging a federal crime when really there were only state law crimes. These loans and this money was controlled by MIMC, which is a mortgage lending company. That's just another way of stating your insufficiency argument. They're interrelated plans. You're now closing it in a claim of misconduct. You just disagree with opposing counselors to the law. Misconduct means, you know, withholding evidence. It means putting on perjured evidence, falsifying documents. Those things are misconduct. They did both of those things in this case. So you're saying you don't think the opposing counselor put on a sufficient case. It's not misconduct. No, the misconduct is that they didn't disclose evidence until after the verdicts that showed unequivocally, which they had to admit in restitution material, restitution documents, had nothing to do with our defendants. So they did withhold evidence. I'm sorry, they withheld evidence that didn't have anything to do with your defendants? There's a lot. No, that's not right. Nothing to do with your defendants. I'm sorry, Your Honor. Pardon? Why don't you restate it? Right, okay. So there was evidence that they gave to the new trial counsels after the verdicts, 1950 pages of evidence, that once the new counsel saw those pages, they saw that what the government had presented at trial was disingenuous and misrepresented to the jury. And they found that one of the witnesses actually did perjure himself, Mr. Daley, about Greg Slater's employment status at M&I Bank when really he worked for M&I Corp. Now these are documents that the government had. Perjured himself or misspoke was wrong. That's a really loaded term. It's not one we use without care. Well, the prosecutorial misconduct law is that the government needs to correct something if they know it's incorrect. And the government knew that Greg Slater worked for M&I Corp. It's in all the documents and the employment files that the government had. However, they allowed Mr. Daley to testify that he worked for M&I Bank. That's the problem. What's the ER site for that? For the employment file? No, for the testimony that he worked at the bank. Oh, Mr. Daley's testimony that Greg Slater worked at the bank? Will Daley's testimony that Mr. Slater worked at the bank. I might have to tell you that on rebuttal. I think we're going to stop now. You have 12 minutes out of your time. Good morning. May it please the Court. Mike Bresnahan representing Joseph Planey. I would like to adopt Ms. Hovland's statements regarding the first two issues and discuss as much of the remaining issues as I have time to discuss. The duplicitous conspiracy count issue and the sentencing guidelines issue are specific to Mr. Planey. The rest apply equally to Planey and Anderson. I'd like to start with and discuss together the duplicitous conspiracy count issue and the jury instruction issue because they're related. Clearly there were two conspiracies alleged in count 32 of the indictment and then during the trial there was evidence of those same two alleged conspiracies were conceptually distinct. They involved different though overlapping conspirators or co-conspirators and different though overlapping victims. A short quote from the indictment. Government described the conspiracy in part as follows. It was an ongoing conspiracy to obtain real estate based on loan applications misrepresenting material information to the lender and misrepresenting the draw requests that were used for construction expenses when in fact the draws were used for personal expenses of Anderson. Very importantly at least one of the overt acts alleged in the indictment, that would be 32-4, involved a property that was built and sold at a profit. Anderson was not the builder in that case though it was given as an example of an overt act of bank fraud in this case. So clearly we have two branches, theoretical branches going on here and not only are they different but they are opposing in a sense. How are they opposing? Well we have one, the first conspiracy involves the fraudulent loan, alleged fraudulent loan applications to build and flip homes. Clearly there was a plan to do that at least early on. And this involved what might be called straw buyers but investors, builders or buyers. Right and then there were the allegations about forgeries to get the advances I'm going to summarize. But how are they conflicting? Correct. Well the second conspiracy was that they were being borrowed by the people that Anderson was supposedly working with to defraud the banks to buy and flip homes. They can't do both because if you're siphoning off all of that loan money or some of that loan money clearly most of the co-conspirators in the first conspiracy are not involved in any way. In fact it's antithetical to what they're trying to do. Because they in fact were trying to build homes in that booming market. Why is the theory that he was trying to get the money all along so he made these fraudulent loans and then in order to actually get the money he has to put in these fraudulent statements so the money actually comes into his pocket rather than get delivered to some of these other people? Well that's because... Why isn't that just one plan? Well for a couple of reasons I think that would be counterintuitive. Why don't you give me one reason? Start with one. Let's see. Yes. One reason would be that he involved friends and family members, close associates, colleagues and that sort of thing in the fix and flip plan. People that you wouldn't expect him to rob through the second. Oh I don't know. Crooks are pretty good at robbing friends and relatives. That is hardly inconsistent. Do you have another reason? Well yes. In fact there was a lot of evidence that homes were in fact built and some were completed and flipped. So it's clear that some of this first... So what? What does that have to do with duplicity or anything else? Well they are two different and I would say conflicting conspiracies. One cannot operate consistently with the other. And they did not involve the same co-conspirators, well some of the same co-conspirators. You have Planey and Anderson allegedly involved in both but you have the straw buyers or the investors only involved in the first conspiracy and they were the victims along with the bank in the second conspiracy. So again clearly two different things, two different kinds of bank fraud alleged in the indictment and evidence of two different distinct bank frauds at trial. It sounds like one big scheme to get money into a client's pocket. This is all... Well again I understand your point. He didn't really want the money going to the other conspirators. He wanted to take it because he wanted to use it for his own personal purposes. Well I don't know what he really thought. I'm just saying the evidence showed that there was a real scheme to defraud the banks for the purpose of buying and flipping homes which back then made all the sense in the world if you were a criminal. And that's what's alleged here because you could, if you got the money you could turn these houses and it was a booming market and you could make money doing that. So I think for that reason the indictment was duplicitous and I think for that reason a special unanimity instruction was required so the jury knew which of these theories under which they should find bank fraud and they did not have that instruction. The case law says they're entitled to that. I'm running a little short on time. And that was asked for? Remind me. Pardon me? That was asked for? No, it's plain error, right? This was asked for? Yes, the duplicity, yeah. No, the unanimity instruction. Oh, the unanimity instruction. Thank you. Plain error. I believe you're correct, yes. It's a plain error argument. The lawyer must not have thought it was so necessary or useful. Maybe he thought that it was better not to. I personally cannot see a strategic reason for not asking for a unanimity instruction in a case where there are two different conspiracy theories because it would give the defense a better chance of a not guilty under those circumstances. And U.S. v. LaPierre. But it sounds to me like the two conspiracy theories is something that you came up with on appeal. You looked at it and said, oh, well, there were two conspiracy theories. And I think a motion to dismiss was filed pre-trial by my client. Applies only to Plainy. But by my client arguing this very thing. So they went forward with the trial with the charge. And that remained a problem or an issue for my client throughout the trial. Your time's about up. You were saying something else? Well, I was about to move on to the sleeping juror issue, but I think we're probably out of time and I should reserve something. I think we understand the sleeping juror issue and what put him to sleep. Thank you. I'll reserve as much as I can at this point. Thank you. Please the court. I'm Peter representing the United States. At the end of the day, there are so many issues. Do you mind if I jump in? Go ahead. What's the I'm concerned about sufficiency of the evidence for counts one and two. It seems awfully skinny under the rule. Twenty nine standard, the novel standard. There's a very verdict friendly standard that absolutely. So what have you got for counts one? So for count one, the Woodward transaction that involved testimony from my master regarding false fraudulent information submitted to the bank in support of that loan. Right. And I got that lender being who? And the answer was, I believe I would have to again, if you have the loan documents, I believe it was probably Greg Slater. And there's certainly testimony about where Mr. Slater worked. But of course, you've got the criminal standard here. Is there another page I'm supposed to be looking at for testimony? On count one, on count one. No, Your Honor, it really is that Mike Bluemaster testimony. That's not beyond a reasonable doubt, is it? When it says I believe it probably is. Well, even even uncontradicted, the best. That's that's Judge Reinhart point. Even uncontradicted, it's probably. Well, I believe that in his testimony, he specifically identified false documents that he said had been submitted to the bank in support of that loan. And under under the law friend Supreme Court case, you don't need a completed fraud in order to establish bank fraud. You just have to show that there was a scheme or artifice to defraud and attempt to defraud. Well, we have to know who which bank it was page 11 of the transcript of that same transcript that he was an employee. That was what they were told. He was an employee of an MNI bank. And so I'll give you that link in the chain. But then it says, I believe I submitted those documents. Probably, he says, probably to Greg Slater. What if he submitted them to a different loan officer at a different bank? Well, and again, this is with respect to Count One. It's a long trial. If there's another place in the record I should be looking, I'm just inviting you to point it to me. Point me to it. In the interest of those are the two I'm most concerned about. Okay. Count Two was a tier one loan, and there was very specific testimony in the record from Mike Leemaster that there were two fraudulent documents submitted to tier one in support of that loan. One was a false verification of bank accounts, and the other was a false summary of bank accounts. And he even testified that he specifically cut and pasted false numbers onto the Bank of America document to sort of doctor the document to fraudulently support this loan application which was submitted for Defendant Anderson's sister, Marty Jo. Okay. So are we supposed to be looking at 2017, that page, where the question is, and which lending institution was that? And the answer was, I think I might have actually done two with her. I believe one went to tier one and one went to M&I Bank. She did two loans, I believe so. And then we go on. And later on, there's a suggestion, kind of a leading question about, was that the first loan? I think the first loan was with M&I and the second one at tier one or vice versa. But again, if there's no other place in the record, I don't want to have your time just tick away, but I'm just trying to make sure that I'm looking at the right pages you want me to look at. Sure. I think it's in the record at Volume 10 of Mr. Planey's excerpts of record from pages 2025 to 2027. Okay. And again, from 2016 to 2029. That's where Mr. Bleemaster testifies in reference to these specific fraudulent documents that he specifically submitted them in support of tier one of an application. Okay. Well, that's a page that I actually crinked. So apparently I thought there was something to talk about there. But on 2025 and 2027. Okay. Good. Thank you. Now on the conspiracy, is there more than one conspiracy? Not just in the indictment, but as far after the evidence. Okay. With respect to the unanimity issue there, no. The evidence showed one overarching conspiracy to fraudulently obtain these loans and then to submit these forged fraudulent draw requests to actually extract that money for the defendant's benefit. And I think one point that's worth making on unanimity is that the judge in this case actually did give something much more than a general unanimity instruction. Instead, the judge instructed that the jurors needed to quote, find that there was a plan to commit at least one of the crimes which the conspirators agreed to commit. And that tracks almost verbatim language that was associated with an affirmance in the United States versus Chen Qing Liu Ao case from this court in 2011, where that language was part of the discussion that resulted in rejection of a similar unanimity objection here. What's also important on this point is that there really was, I would submit, no real risk of juror confusion on these issues because the jurors returned guilty verdicts on 23 substantive bank fraud counts of conviction in which they found guilt for both defendants Planey and Anderson. So in other words, the jury unanimously found that as to those 23 very specific instances of fraud, the two defendants both committed those crimes. And there was overwhelming evidence in the record that the defendants were working together throughout this conspiracy. Recall that Mr. Planey was the office manager for Mr. Anderson and was his CPA. He was involved in all aspects of the fraud throughout the conspiracy. So really, the evidence showed but one conspiracy. There was something much more specific than a general unanimity instruction. And there was really no risk of juror confusion here given all these specific verdicts that were incorporated by reference into the conspiracy count. What was incorporated by reference? I couldn't hear you. All of the underlying substantive bank fraud counts were incorporated by reference into the conspiracy count. Thank you. Thank you. Well, I actually thought that the special defendants didn't just check all the boxes, guilty, guilty, guilty. It seems to me that they were pretty careful on count one. They had different results, count two, count eight, guilty, not guilty for each individual defendant. That's right, Your Honor. They carefully parsed through all of the counts and made independent determinations with respect to each one. That's true for the individual ones. The question, I must say I find the idea of all these circles with circles within circles about when you have four or five conspiracies going on, usually in the narcotics cases, I find that difficult to follow. But it's not simply that you have a narcotics ring, which is the leaders are involved in decisions, want to make money from selling drugs, but they get involved in several conspiracies at the same time. That's really not that unusual. And there you do need a unanimity instruction if you're going to convict them of the conspiracy. Your main answer to that, I think, is aside from the fact that there's obviously one overall conspiracy, that you feel that there was a sufficient unanimity instruction as to the conspiracy. And could you again tell me that's the case you just cited? Yes, Your Honor. It's United States v. Chen Qing Liu. So United States v. Liu, L-I-U. It's a 2011 case from this circuit, which had language that is repeated essentially verbatim in the jury instruction that was used here. Another observation made in the Liu case was that the defendant in that case was convicted on a the court recognized that because the jury had unanimously agreed that the defendant had engaged in that criminal act, and because that criminal act was also cited as an overt act in the conspiracy count, that that further buttressed the notion that there was juror unanimity. Now, what about the motion for new trial? It was the wrong standard. So with respect to the motion for new trial, I think if you carefully read through the district court's order, it's clear that she was cognizant of the correct standard and applied it in this case. And the reason I say that is because she recognizes explicitly that Rule 33 is one of the grounds of the motion. She says that on page 2 of her order, which is at volume 1 of Anderson's excerpts of record, tab 3, on page 5 of the order, she specifically identifies the defendant's arguments, that they cited various documents and records to challenge essentially whether M&I Bank was the lender for the M&I Bank counts of conviction. And she accurately summarizes the of this misconduct claim that is also asserted under Rule 33, which is that the government knew allegedly that M&I Bank wasn't the actual lender, but proceeded with the case anyhow. Now, she says on page 5, she makes findings that the evidence was sufficient. She says it was unclear how these unadmitted materials are even relevant under Rule 29. But then she goes further. She finds that Mr. Daley's testimony, along with other admitted evidence at trial, provides sufficient proof that the And then she goes even further from there and comments in a footnote on that same page, quote, there is enough evidence that was admitted that connects M&I Bank to the loans and that corroborates Mr. Daley's testimony about M&I Bank's involvement in the loans. So I think what all this means is that she was engaged in the process that Rule 33 requires, which is that she not only looked at the bare sufficiency of the evidence, but she also independently considered and evaluated the trial evidence and determined that there was no basis to find misconduct and no basis to warrant a new trial. So I understand that the Hinkson case says that the district court is to identify the applicable standard. But I don't think Hinkson forecloses the conclusion that you can look at a trial court's order and determine from the entirety of the order that the judge was aware of the standard and appropriately applied it. The judge here had also reviewed the party's briefs, which discussed the standard. And she was really in the best position, having observed all of the pretrial and trial proceedings, to conclude whether the Rule 33 standard was met, whether the defense had met their burden of showing a preponderance of the evidence weighing against these verdicts. Counsel, didn't she make a finding that there was nothing suggested misconduct during the discovery phase or later? She did. She specifically found both of those things. On pages 5 and 6 of her written order, dated September 23? Is that where I should be looking? Yes. Thank you. There were some comments about the, you know, some of the misconduct allegations. And we heard two specific assertions. One was that the government withheld evidence by producing 1950 pages after trial. That is an assertion that is made in the defendant's briefs on appeal, but there is no meat on those bones. They never explained what those documents were, what issues they related to, how they might have been prejudiced thereby. The motion for new trial that was filed in the district court after the convictions relied entirely on disclosed and pre-trial discovery, and it also cited various public domain matters that dated back to the 1990s. So there was nothing in that motion that really identified anything disclosed post-trial. They also talked about... Counsel, the opposing counsel argued that one of your one of the government's witnesses testified that Mr. Slater didn't work at M&I Bank, that a personnel file showed that to be the case. But there is testimony from Will Daly that he did, at least back when Will Daly did. Is the problem a timing problem that Greg Slater used to work there, but not at the time these events were going on? Or what's your response to the argument? Because I've asked counsel to come back with ER sites for me. Sure. So my response to the argument is that there was ample evidence in the trial record tying Mr. Slater to M&I Bank. There were uniform residential loan applications that he signed, in which he signs as an employee of M&I Marshall and Isley Bank. There were multiple borrower witnesses who testified that they were referred to him at M&I Bank in order to get their loans. And when they found out that the draw requests were forged, that's who they called. Right. That's the part I do understand. Forgive me for interrupting, but I don't want to take up too much of your time. That's the part I understand. Opposing counsel is saying that an employment file was produced that indicates that he wasn't an employee there. Could you respond to that, please? Sure. So in pretrial discovery, Mr. Slater's employment file was produced to the defense. The employment file contains documents showing that he was employed by M&I Bank. However, it's somewhat imprecise. It also contains documents with M&I Mortgage Corporation logos on them and references to M&I Corporation. Keep in mind, this was not information that defense counsel used to trial. They made no effort to challenge these facts before the jury at trial, even though they had all of this information. One of the documents is a performance evaluation from 2006 on M&I Mortgage Letterhead, but faxed, according to the header, to M&I Bank. So admittedly, there are some imprecise documents which may support a conflict in the evidence. But this evidence wasn't withheld from the defense, and there's no basis to find any actually false testimony was given by Mr. Daley. I think your argument is that there's no basis to find prosecutorial misconduct, right? Correct. Correct, Your Honor. We also some, does Your Honor have a question? Just one final note. We submitted a motion for judicial notice that attached the actual deeds of trust and actual publicly recorded instruments that pertain to the M&I Bank loans in question. Those instruments all identify on their face M&I Marshall & Isley Bank as the lender for these loans. We didn't do this to bolster the sufficiency of the evidence challenge, but we did this in response to statements in the defendants' opening briefs on appeal that deeds of trust establish lender identity. And we did it to further show that there was no prosecutorial misconduct, no bad faith effort to charge these defendants with state crimes instead of federal crimes. Do Your Honors have any questions about any of the other issues? Thank you. Okay. Thank you. Don't pay attention to the clock. We'll give you a couple of minutes. A couple of minutes. Right. I will respond to a couple of things and then I'll give you some sites that I think are important for the Court, particularly the one you asked for. First, the District Court's order on page 5 that appellee cites to show that the District Court knew what it was doing with the prosecutorial misconduct claim is actually the opposite of what he says. And the reason is this. I don't understand his argument to be that she cited the right standard. Quite the contrary, at the top of page 5. I think he's looking at the bottom of page 5 where she makes a finding that there wasn't any misconduct. Right. That's what I'm talking about, too, actually. Okay. At the bottom of page 5, the District Court says, having concluded that there is sufficient evidence for the Court to find prosecutorial misconduct on that theory. Now, the problem with that is she used the Jackson Neville's standard to conclude that there was sufficient evidence of M&I Bank. So she used the wrong standard to then dovetail it onto the prosecutorial misconduct claim. So that is our problem there. I'm looking at the bottom of page 5. Where is that language? In the last paragraph, the second sentence, she says, assuming this argument is not waived, having concluded that there was sufficient proof that M&I Bank was the lender for the loans, there is no basis in the record for the Court to find that prosecutorial misconduct occurred under this theory. There's a sentence that says, there is nothing in the documents and records submitted by defendants that shows misconduct during discovery. Full stop. Right. That's during the discovery phase? Right, during the discovery phase. There was misconduct shown post-verdicts, and I have some citations for that to share with you as well. Okay. I'll go to that right now. The misconduct occurred post-verdict? The evidence of the misconduct appeared post-verdict. When did the misconduct occur that you say is shown in the post-verdict evidence? Throughout the trial, the misconduct occurred. You cite Napui, and I think what you're arguing is that the government allowed witnesses to testify that Slater worked at the bank when he didn't? Yes. And another example of that is the government introduced Exhibit 841 during Sanchez's testimony and had Mr. Sanchez testify that it was proof of Count 1 that he had submitted a fraudulent document verifying employment. Well, when you look at that document, it was signed 10 months after that loan had closed, and later in restitution proceedings, the government admits that that goes to Overt Act 18, which has nothing to do with the defendants. So they used a document from an overt act that the government later admitted had nothing to do with the defendants in its case in chief to prove up Count 1. And there's a straight line to that, if you would like me to tell you all the sites. I've got my pen ready. Okay. So if you take a look at Trial Exhibit 841, and Greg Sanchez's testimony regarding Count 1. It is where? Oh, I'm sorry. The exhibits were transmitted to the court, so those will be in the exhibits. I don't have 841 in the excerpts of record, at least not in mine. Does this go to anything other than Count 1? That specific misconduct does not. No, I was just giving you an example. What is the exhibit? What is the document? It is a CPA letter admitted during Mr. Sanchez's testimony that they used to have Mr. Sanchez testify, showed that he was verifying some employment on the loan on Count 1 when that was clearly not the case. It was impossible, as it turned out. Does it require a remand on the motion if Count 1 is removed from the case? Yes. Why? We still require a remand on the prosecutorial misconduct for the entire case. But could you give me those sites about prosecutorial misconduct? Yes, I'm sorry. Okay. Let's do that right now. We're getting a field. The first site you asked for was Will Daly's testimony. That's at My Volume 4 Excerpts of Record, Tab 11. It's May 14, 2014, at pages 85 through 86. The other site I would like to tell the court to take a look at, or ask the court to take a look at, is the FBI Loss Spreadsheet that was. What page? Oh, it's page 85 through 86. And the next item is Excerpts of Record, Volume 11, at Tab 22. Right now I'm talking about the FBI Loss Spreadsheet, which is Volume 11, Excerpts of Record, Tab 22, at pages 3 and 4. And that was a document that was given to the counsel after the verdicts, which shows that the bank they were claiming loss on was M&I Mortgage Company Corporation. I'm sorry, MIMC, not M&I Bank. Now, the copy in my excerpts is very blurry and hard to read. However, I think it's in the other counsel's excerpts of record, and I know that you can get it on the DCT documents, so I encourage you to do that. Another exhibit that shows prosecutorial misconduct is Demonstrative Exhibit, Trial Exhibit 733-001. It is the blank draw consent form that the prosecution used during the testimony of Mr. Daley, where they asked him, they were trying to get him to explain why that form said M&I Mortgage Company at the top. And he said, well, that's just the form that M&I Bank uses. However, if you compare that blank form that they used in trial to the actual draw consent forms that they also put in later, Trial Exhibits 80-84 and 65, which can be found at Excerpts of Record, Volume 11, Tab 22. You'll see that the blank form didn't have M&I Mortgage. Oh, sorry. It's the entire tab is the Trial Exhibits 80-84 and 675. I'm looking at the blank form, and it doesn't have what? The blank form that they showed Mr. Daley, it omits M&I Mortgage Corporation from under the loan number line. It says, I hereby authorize M&I to release draw number blank. That one? Yes, and just below that. Where is this document? The blank form is not in the Excerpts of Record. It's in the Trial Exhibits, and that's at 733-001. However, the filled-in forms are in the Excerpts of Record, and those are at Volume 11, Tab 31. And my point is that... But Tab 31 has a lot of things in it. Okay, that's right. I'll give you an example. On, say, Page 2, if you look at that form and compare it to the blank form, which is 733-001. So on the blank form, it says at the top, M&I Mortgage Company. On this form, it doesn't. They cropped it. It says M&I Mortgage Corporation. And then further down, next to the signature line, it says M&I Mortgage Corp. Loan Number. But on the blank form, it just says Loan Number. And then in the Excerpts, Tab 31 that we're talking about, these are the same things. These each are joined with an affidavit of the contractor, which also has at the top of it M&I Mortgage Corporation Loan Number. That isn't included in the blank form either. So they showed a blank form to Mr. Daley that is not the same form that was used in the evidence that they were using against the defendants. And from this, you said they cropped it. You're referring to the U.S. Attorney's Office? I can only surmise that, because when I pull it up, I can see the whole form. But when they put it into evidence, you can't see the top. Okay. So, you know, there's an opportunity to cross-examine on this, yes? Correct. So what's your response? You know I'm going to ask that question. So what's your response to that? My response is that Mr. Fetter was overwhelmed. He tried to get off the case and said that the case was taking over his practice and it was taking him down, and they wouldn't let him off the case. And so I think he did a poor job. However, it doesn't change the fact that the prosecution altered these documents when they put them in front of the jury. Well, or used an incorrect document. Counsel, you're making a leap to altered, cropped it. Those verbs are loaded verbs. And so you know what the standard is for, we're looking for, you're arguing, misconduct. I understand. Are you saying that this document that you show here that's filled in, you can see the entire document? And for example, where it says M&I Mortgage Corporation, that was filled in? Yes. See where it says it on the blank form? That's supposed to say that at the top of this form on page two as well. And it does when you pull it up. I say potato and you say potata. Did you hear my question? I'm sorry, I didn't understand that. Look at this form, which is page two of the exhibit of tab 31. You say you can see the entire form and it, that entire form as filled in has M&I Mortgage Corporation at the top? That actual piece of paper? Yes, this actual piece of paper, when I pull it up in the discovery, has that at the top. But this piece of paper that went to the jury didn't. With the signature, the $62,000? Yes. And where it says M&I Mortgage Corporation loan number? Yes. That does not show up? No, that shows up. It just doesn't show up on the blank form that you have in your hand that they showed Mr. Daley about why they were using the same form when it wasn't the same form. I'm not sure how that, I mean, that seems to hurt the government. It should hurt the government, but I think it just confuses the jury. The fact that they didn't have the M&I Mortgage Corporation loan number, that's actually, the fact that it's omitted from the blank form seems to hurt the government. And I don't think so, because I think the government was trying to show that this form was very innocuous and that it was just boilerplate and they were just using it because they were sloppy and they didn't change the name of the banks. When really they changed the blank form. It seems like it, but I'm sorry. So I might have another, I have another site that I would like the court to look at, which is the government's response to the objections to the pre-sentence report. And that can be found, it's document 319 at pages 9 through 10. And that's where the government admits that counts... Is that in the excerpts? It is not in the record of excerpts, I'm sorry. It is in the district court documents 319 at pages 9 through 10, and they admit that counts 3, counts 15, and 9 of the overt acts have nothing to do with the defendants at all. And this is all evidence that went to the jury, which further confused them and conflated the issues and is part of our prosecutorial misconduct argument. And that's the document from the PSR? It is the document post-verdict during when the defense objected to the PSRs, the government responded. It's their response. They admitted basically that these counts and overt acts... This was a pleading? Yes. Not an exhibit? No, it's a pleading, yes. You just didn't include it in the ERs? I can't find it right now, but it might be in my co-defendant's ERs, and I can look for it. Thank you. Anything else? Thank you. Do you need one minute?
judges: Reinhardt, Kozinski, Christen